JAMES ALFRED AND JOSEPHINE R. SIMON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Simon v. Commissioner
Docket No. 2235-88
United States Tax Court
T.C. Memo 1991-236; 1991 Tax Ct. Memo LEXIS 265; 61 T.C.M. (CCH) 2740; T.C.M. (RIA) 91236; May 29, 1991, Filed *265 Decision will be entered under Rule 155. James Alfred and Josephine R. Simon, pro se. Mary Schewatz, for the respondent. PARR, Judge. PARR
MEMORANDUM OPINION Respondent determined a $ 10,457 deficiency and a $ 1,956.80 addition to tax for failure to timely file under section 6651(a)(1) against petitioners for their joint individual Federal income taxes for taxable year ending December 31, 1984. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for 1984. All Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues for decision are (1) whether petitioners substantiated expenditures in excess of those previously substantiated and allowed, and if so, whether any portion thereof is deductible under section 162 and/or section 165 in 1984; and (2) whether petitioners are liable for the addition to tax under section 6651(a)(1) for failure to timely file their income tax return. Some of the facts are stipulated and found accordingly. The stipulation of facts and accompanying exhibits are incorporated herein. Petitioners resided in North Hollywood, California, when they *266 filed their petition for redetermination in this Court. Unless otherwise indicated, all references to petitioner in the singular are to James Alfred Simon. General Background
In 1971 petitioner, an independent creator of animated characters and cartoons, began doing business as Wantu Animation, Inc. During his career petitioner has performed subcontractor work for Hanna-Barbera Productions, Inc., Filmation Studios, and Ruby Spears Productions. To date petitioner has worked on and helped complete over 90 animated short films and cartoons, and collected more than 25 international and domestic awards for his work. When petitioner's subcontractor relationship with Filmation ended around late 1983 or early 1984, petitioner decided to freelance as a cartoon animator, produce his own films, and sell his ideas, characters, and/or films to national and independent syndicated television. Accordingly, petitioner set up his own studio. Thereafter, he created, developed, and drew numerous animated characters, prepared character and story board presentations, developed and prepared animated commercials, comic strips, and cartoon presentations, and independently produced his first animated *267 presentation film titled "Little Miss Lovenote." By August 1984 petitioner, unable to sell the film "Little Miss Lovenote" or any of the other cartoon character ideas, and owing money to freelance artists and writers he had used, accepted an independent studio supervisor position with DIC Enterprises. Petitioner received $ 1,500 a week. Sometime thereafter, DIC made petitioner a director. Thereafter, petitioner directed 13 one-half-hour segments of the then-popular syndicated television series "Care Bears." In 1986 petitioner directed "Popples," a syndicated television series; moved to Tokyo, Japan, for 5 months as the liaison between DIC and the studios in Tokyo; and acted as supervising director of 65 one-half hour "Dennis the Menace" syndicated television shows. In 1987 petitioner directed another season of "Popples." Petitioner is currently the producer/director and key character designer of the NBC network series "The New Archies." For convenience, we combine our findings of fact and opinion for each issue. Issue 1. Expenditures
Petitioner reported gross receipts of $ 58,530 and claimed a $ 34,144 deduction on his 1984 Schedule C. The expenditures represent out-of-pocket *268 costs of creating, developing, and drawing various animated presentations and producing his first film titled "Little Miss Lovenote." Respondent allowed petitioner a $ 3,377.24 [1] deduction and stipulated that petitioner substantiated an additional $ 5,808.23. [2] Accordingly, $ 24,958.53 remains in dispute. Petitioner's trade or business
In 1984 petitioner was *269 a freelance animator of cartoon characters, i.e., in the trade or business of creating and drawing animated cartoon characters. Cf. . In accordance with respondent's concession as indicated above, we find that all expenses petitioner substantiates as incurred in 1984 attributable to this activity are deductible under section 162.[3]
*270 Additionally, petitioner independently produced a 10-minute presentation cartoon film titled "Little Miss Lovenote." Petitioner's witness Mr. Kubiak testified that petitioner hoped to develop his animated business into a full production company. Based on all the evidence, we find petitioner was not in the trade or business of producing films during 1984, but rather merely preparing to go into that trade or business. [4] We find all costs attributable to the production of "Little Miss Lovenote" constitute startup or preopening costs which are not deductible under section 162. , affd. without published opinion ; ; . [5] But that is not the end of the matter. We must decide whether petitioner's unsuccessful attempt to enter into the trade or business of producing films in 1984 entitles him to a loss deduction under section 165. We find it does. See sec. 165(c)(2). *271 It is clear from the record that petitioner abandoned his efforts to enter into the film production business after he began working for DIC in the later part of 1984. Moreover, as of the day of trial, petitioner has not renewed his attempt to start his own production company, although he testified that he has not given up that hope. On this record, we find petitioner is entitled to a section 165 loss deduction in 1984. Cf. . Based on the evidence and as explained below, we find petitioner substantiated additional out-of-pocket expenditures during 1984 of $ 15,200; $ 7,200 attributable to his freelance animation trade or business, and $ 8,000 attributable to his production efforts. Accordingly, we conclude petitioner is entitled to deduct $ 12,627 [6] *272 under section 162 and $ 11,758 [7] under section 165(a). Explanation of deductible expenditures
a. Animated characters
In 1983 Loni Bernstein, a writer, asked petitioner if he would develop/create characters for a script titled "Thumby." Petitioner agreed and between 1983 and 1984 expended between $ 250 and $ 500 on this presentation. We will not consider this expense in our final decision since petitioner was not sure whether the expenditure was made in 1983 or 1984. b. Animated commercials
In 1984 Lafayette Jones of the American Health and Beauty Aids Institute (AHBAI) in Chicago, Illinois, asked petitioner to prepare a commercial presentation for the institute's beauty products. Petitioner agreed and prepared a presentation titled "Black on Black Love." Additionally, petitioner made several trips to Chicago to make the presentation. Petitioner expended $ 3,500 to prepare the presentation boards, including the painting and scripts. He was not reimbursed *273 for his expenses or paid for his creative efforts. AHBAI did not purchase petitioner's idea. Accordingly, we allow petitioner to deduct $ 3,500 under section 162. c. Comic strips
Ebony Magazine publishes a comic book for children for which petitioner decided to develop a character named "Ebony Junior." During one of his 1984 trips to Chicago, petitioner spoke with and presented to the managing editor of Ebony Magazine "Ebony Junior." The presentation, including the presentation art boards, cost petitioner $ 1,200. Ebony did not purchase petitioner's idea and did not reimburse petitioner for any of his expenditures. We find petitioner is entitled to deduct $ 1,200 under section 162. d. Cartoons
Petitioner wanted to create, produce, and syndicate a cartoon series called "Mother Un-Goose." [8] Accordingly, he prepared eight separate cartoon board presentations at a cost of $ 250 per cartoon, including "Mother Un-Goose," "Hey Diddle Diddle," and "Humpty Dumpty," expending a total of $ 2,000. Petitioner never sold his idea. *274 In 1984 petitioner was hired by (a corporation) to help create and produce a cartoon presentation titled "On The Block." Petitioner spent $ 500 photocopying the presentation. The corporation neither purchased petitioner's idea, nor paid any of his expenses, including the $ 500. We find petitioner is entitled to deduct the $ 2,500 ($ 2,000 plus $ 500) under section 162. e. "Little Miss Lovenote" [9]
Sometime before April 29, 1984, petitioner received a letter from Dwight M. Ellis (Mr. Ellis), vice president of the Department of Minority and Special Services of the National Association of Broadcasters, inviting petitioner to participate as a minority producer in the NBA Minority Television Programming Exhibition (MTPE) April 29 through May 2, 1984, in Las Vegas, Nevada. Petitioner, realizing that people from television networks and syndicated stations from around the nation would attend the exhibition, accepted Mr. Ellis' invitation and decided to produce his first film/video ("Little Miss Lovenote") to present at the exhibition. *275 Before petitioner produced the "Little Miss Lovenote" video, he had to create and draw the characters, prepare the layout, and develop a basic theme for the story. Thereafter, he prepared presentation art pieces [10] (presentation boards) on each of the "Little Miss Lovenote" characters. Petitioner did not have time to prepare all the presentation boards and the entire story or treatment, [11] and produce the film "Little Miss Lovenote" by the April 29 deadline by himself. Accordingly, he hired numerous freelance artists and writers to assist him. Some *276 artists hand-inked the characters and prepared the lettering on the presentation boards, while others painted the characters and the background. It took thousands of drawings to produce "Little Miss Lovenote." We find petitioner expended $ 5,000 on this portion of producing the film and an additional $ 3,000 photocopying the drawings. Petitioner presented his "Little Miss Lovenote" film to numerous third parties in an unsuccessful attempt to sell it and obtain the rights to produce a cartoon series. Accordingly, petitioner is entitled to deduct the $ 8,000 preopening expenses under section 165(a). Cf. . Issue 2. Addition to Tax for Failure to Timely File
Petitioners signed their joint 1984 Federal *277 income tax return on August 8, 1985, and mailed it "Certified-Return Receipt Requested" to the Internal Revenue Service Center in Fresno, California, on August 10, 1985. The Service received the return on August 13, 1985. Petitioners did not request an extension of time for filing their return until August 15, 1984, and none was granted. Section 6655(a)(1) imposes an addition to tax upon taxpayers who fail to file a timely return, unless they show that their failure to file was due to reasonable cause and not willful neglect. This is essentially a question of fact, and the burden of proof is on petitioner. ; Rule 142(a). Petitioner did not present any evidence on this issue. Accordingly, we find for respondent. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. Respondent allowed petitioner to deduct the following expenses: ↩
1.
Equipment (phone)
$ 2,346.00
2.
Lumber
29.88
3.
Copies
12.00
4.
Copies
6.39
5.
Artwork
159.96
6.
EOF ($ 58.52 + $ 26.57)
85.09
7.
Typing
34.50
8.
Pic - Photos
137.38
9.
Foto-Kem
164.34
10.
Animation Camera Serv.
349.51
11.
Anderson Typographics
52.19
TOTAL
$ 3,377.24
2. Additional amounts substantiated: ↩
For "Little Miss Lovenote:"
1.
Nick Vasu, Inc.
$ 3,403.23
2.
Typing
155.00
3.
Nancy Ulene, printing
200.00
$ 3,758.23
Other productions
4.
Nick Vasu, Inc.
1,950.00
5.
Carpet deposit
100.00
$ 2,050.00
TOTAL
$ 5,808.23
3. Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. An ordinary expense is one which arises from "transactions * * * of common or frequent occurrence in the type of business involved." . "Ordinary has the connotation of normal, usual or customary." . An expenditure is necessary where it is "appropriate and helpful" in accomplishing the activity involved. . See .↩
4. See .↩
5. See .↩
6. The $ 12,627 is calculated by adding $ 3,377 (the amount respondent allowed), $ 2,050 (the amount petitioner substantiated to respondent before trial), and $ 7,200 (the amount petitioner substantiated to this Court).↩
7. The $ 11,758 is calculated by adding $ 3,758 (the amount petitioner substantiated to respondent before trial) and $ 8,000 (the amount petitioner substantiated to this Court).↩
8. These presentations are black interpretations of nursery rhymes.↩
9. The video of "Little Miss Lovenote" was petitioner's final selling tool of his ability to create, develop, and produce an animated story. It is not an episode since it was never sold.↩
10. Presentation art pieces (presentation boards) are usually used as the initial selling tool for a film/video, rather than a completed film/video. They include character illustration boards, story lines, and model packs. The presentation boards are presented to a network. If the network likes the story and the characters, it will generally allow the creator to have a script written and a presentation film produced, and then perhaps a network deal will be made.↩
11. Petitioner hired writers to develop the treatment and write the final script. The treatment is used with the presentation art boards and generally illustrates what the characters will do, where they will live, and what they will say and/or sing.↩